**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| **In the Matter Jointly Administered:** | |
| **GRETTER AUTOLAND, INC,** | Case No. 14-02831 |
| **GRETTER FORD MERCURY, INC** | Case No. 14-02832 |
| **GRETTER CHEVROLET COMPANY** | Case No. 14-02833 |
| Debtors | Chapter 7 |

## NOTICE OF APPEAL

COMES NOW, Creditor James M. Gretter, *pro se*, and, pursuant to Federal Rule of Bankruptcy Procedure 8003, hereby enters his Notice of Appeal in this contested matter from the Court's August 17, 2015 Memorandum of Decision denying Debtor's Motion to Assume its franchises with General Motors, LLC and Ford Motor Company, (Doc. 256, attached as Exhibit A), and October 9, 2015 Order denying Debtor's post-trial motion for relief from or to amend the judgment (Doc. 322, attached as Exhibit B), both of which are final orders.  Creditor is Debtor's co-debtor and holds a contingent claim against Debtor and a contingent security interest in Debtor's property by operation of an unmatured equitable right of subrogation running through Creditor Washington State Bank.

The names of all parties to the Orders appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

Gretter Autoland, Inc.'s attorney is Bradley R. Kruse, Brown, Winick, Graves, Gross, Baskerville, & Schoenebaum P.L.C., 666 Grand Ave., Ste 2000, Des Moines, IA 50309, Telehone: (515) 242-2460.

Ford Motor Company's attorney is Julie Johnson McLean, Davis, Brown, Koehn, Shors & Roberts, P.C., 215 l0th Street, Suite 1300, Des Moines, Iowa 50309, Telephone: (515) 288-2500.

General Motors, LLC's attorney is Dallas J. Janssen, Janssen Law Office, 700 Second Avenue, Suite 103, Des Moines, Iowa 50309, Telephone: (515) 274-9161.

Edwards Auto Plaza, Inc.'s attorney is Tiernan T. Siems, Erickson & Sederstrom, P.C., 10330 Regency Parkway Drive, Suite 100, Omaha, Nebraska 68114, Telephone: (402) 397-2200.

Washington State Bank's attorney is Ray Terpstra, 3600 First Avenue NE, Ste. 101, Cedar Rapids, IA 52402, Telephone: (319) 364-2467.

Ally Financial, Inc.'s attorney is Donald H. Cram, III, Severson & Werson, P.C., One Embarcadero Center, 26th Floor, San Francisco, CA  94111, Telephone: (415) 677-5536.

Official Committee of Unsecured Creditors' attorney is Jeffrey D. Goetz, 801 Grand Ave, Ste. 3700, Des Moines, IA 50309, Telephone: (515) 246-5817.

**Election pursuant to 28 U.S.C. § 158(c)(1)(B)**: Creditor elects to have this appeal heard by the United States District Court for the Southern District of Iowa.

Dated: October 23, 2015

*/s/ James M. Gretter*
JAMES M. GRETTER ID No. IS9997631
1200 Main St., Ste. 2200
Kansas City, Missouri 64105
Telephone:  (816) 472-7474
Facsimile:  (816) 472-6262
Email:  jgretter@fwpclaw.com
***PRO SE* CREDITOR**

2

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies under penalty of perjury, that a copy of his document was served electronically on all parties who receive electronic notice through CM/ECF on this 23rd day of October, 2015.

                                      */s/ James M. Gretter*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of Jointly Administered:

| | |
|---|---|
| **Gretter Autoland, Inc.** | Case No. 14-02831-als11 |
| Debtor(s) | |
| **Gretter Ford Mercury, Inc.** | Case No. 14-02832-als11 |
| Debtor(s) | |
| **Gretter Chevrolet Company** | Case No. 14-02833-als11 |
| Debtor(s) | |

**MEMORANDUM OF DECISION**
(date entered on docket: August 17, 2015)

<u>COURSE OF PROCEEDINGS</u>

Before the Court are the Debtor's Motions to Assume and Assign its dealership agreements with Ford Motor Company ("Ford") and GM Motors, LLC, ("GM") and the objections filed by these manufacturers.[1] Jurisdiction for these matters is found at 28 U.S.C. sections 157(b)(1) and 1334. After considering the evidence[2] and arguments submitted by the parties the following findings of fact and conclusions of law are entered pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons below the objections are sustained and the Motions are denied.

---

[1] The following counsel appeared on behalf of the parties noted at the hearing conducted on July 24, 2015: Bradley R. Kruse (Gretter Autoland, Inc.); Tiernan T. Siems (Edwards Auto Plaza, Inc.); Donald H. Cram III (Ally Financial, Inc.); Julie Johnson McLean and Thomas M. Byrne (via telephone) (Ford Motor Company); H. Raymond Terpstra II (Washington State Bank); Jeffrey D. Goetz (Official Committee of Unsecured Creditors); Jeffrey J. Jones and Dallas J. Janssen (General Motors, LLC).

[2] Including GM Exhibit E and Debtor's Exhibit 4 which have been admitted pursuant to the orders entered at docket numbers 253 and 254 which granted the respective parties' Motions to Submit Supplemental Evidence.

BACKGROUND

On December 1, 2014, Gretter Autoland, Inc. and two affiliated businesses (collectively "Gretter") filed voluntary chapter 11 petitions which are being jointly administered. In an effort to preserve their value Gretter wanted to sell its dealerships as going concerns in bankruptcy. Due to the financial condition of the company, time was of the essence to accomplish this goal. Attempts to sell the businesses did not materialize until Edwards Auto Plaza, Inc. ("Edwards") submitted its proposal to purchase the assets of the dealerships. Gretter filed a Motion to Sell Free and Clear pursuant to 11 U.S.C. § 363(f). Ford and GM objected to that motion on the grounds that their franchise agreements could not be transferred under the proposed Amended Asset Purchase Agreement ("APA"). After a hearing the objections of Ford and GM to the 363 sale motion were sustained and Gretter was directed to follow the procedure under 11 U.S.C. § 365 for the assumption and assignment of those contracts. An auction was also ordered for the sale of Gretter's assets. On April 2, 2015 Edwards' bid at the auction was approved under the terms of the APA. Gretter now seeks to assume and assign the contracts identified in the APA so that the sale transaction can be concluded.

DISCUSSION

In 1974 Thomas D. Gretter[3] owned and operated a Chevrolet dealership in Keota, Iowa. In 1997 a Ford dealership was acquired and operated at 201 Airport Road in Washington, Iowa. Later a GM dealership operating in downtown Washington, Iowa was purchased and relocated to 201 Airport Road. It was at this time that Gretter began operating a "dual facility," meaning that multiple vehicle lines were sold from a single location. A Termination and Release Agreement was executed by John D. Gretter[4] on January 28, 2008 that provided for cash incentives to be

---

[3] Thomas D. Gretter served as President of Gretter from 1974-2008 and from 2013 to the present.
[4] John D. Gretter served as President of Gretter from 2008-2013 when he sold his interest in the company.

Ex. A

paid to Gretter to terminate its existing agreements for the GM products lines in order to consolidate the Keota and Washington dealerships.

It is first necessary to identify the contracts that are subject to the assumption and assignment requested by Gretter. As to Ford this is a simple determination. There is only one contract at issue and it is the Ford Sales and Service Agreement dated October 31, 1997 ("franchise agreement"). Gretter and GM have multiple agreements.[5] The Motion filed by Gretter attached a Dealer Sales and Service Agreement(s) dated November 1, 2010, a variety of Motor Vehicle Addendums and documents related to the Area of Primary Responsibility. GM submitted additional documentation consisting of a complete copy of the Dealer Sales and Service Agreement(s), the Exclusive Use Agreement and the Summary Agreement which are all dated January 28, 2008. All of these documents govern the relationship between Gretter and GM (collectively "franchise agreements"). The Eighth Circuit has concluded that multiple documents executed at the same time by the same parties are to be construed as one instrument. *Lewis Brothers Bakeries, Inc. v. Interstate Brands, Corp.* (*In re Interstate Bakeries Corp.*), 751 F.3d 955, 961 (8th Cir. 2014) (applying Illinois law). This conclusion is equally applicable under Iowa law and Michigan law (made applicable by the Dealer Sales and Service Agreement). *Bergfeld v. Farm Credit Banks of Omaha*, 439 N.W.2d 217 (Iowa Ct. App. 1989) (quoting 17 Am. Jur.2d Contracts s 263 at 668 (1964)); *West Madison Inv. Co. v. Fileccia*, 226

---

[5] Gretter raises an issue that appears to question the validity of the current GM franchise agreements. This contention stems from Thomas D. Gretter's testimony that GM failed to pay the cash incentive under the Termination and Release Agreement executed on January 28, 2008. GM's witness disagreed with this fact but had not obtained verification of the payment at the time of the hearing. The parties' post-hearing Motions to Submit Supplemental Evidence were granted by the Court. The supplemental evidence includes verification of the payment of the cash incentive to Gretter Autoland and to Gretter Motor Company and a copy of the Termination and Release Agreement upon which the payment was based. Because the terms and conditions of the Termination and Release Agreement have been satisfied it is not an executory contract. To the extent Gretter argues that the current Franchise Agreements are invalid due to GM's non-payment, that argument is without merit.

Ex. A

N.W.2d 857, 860 (Mich. Ct. App. 1975). Accordingly, the elements of 11 U.S.C. § 365 must be applied to all of the GM franchise agreements.

Even if a contract contains provisions that restrict or prohibit its transfer a bankruptcy court may authorize the assumption or rejection of an executory contract if such action is based upon sound business judgment and is in the best interests of the estate. 11 U.S.C. §§ 365(a), 365(f)(1); *In re Quantegy, Inc.*, 326 B.R. 467, 470 (Bankr. M.D. Ala. 2005). A debtor's ability to exercise its rights under 11 U.S.C. section 365 is not unfettered. Gretter must meet two conditions to obtain approval for the assumption and assignment of its franchise agreements: 1) it must assume the Ford and GM franchise agreements in accordance with 11 U.S.C. § 365(b) and 2) provide adequate assurance of future performance under those contracts' terms. 11 U.S.C. § 365(f)(2).

> 11 U.S.C. § 365(b)(1)(A) states:
>
> > If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
> >
> > cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

No monetary defaults exist under the franchise agreements. This circumstance, standing alone, does not result in Gretter's automatic ability to assume the contracts. Non-monetary defaults are

Ex. A

equally subject to the cure provisions found at 11 U.S.C. § 365(b)(1)(A).  *In re Claremont Acquisition Corp.*, 113 F.3d 1029, 1034 (9th Cir. 1997); *In re Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009).  Both Ford and GM assert that Gretter has failed to comply with numerous terms of the franchise agreements which prevents assumption of their respective contracts under 11 U.S.C. § 365(b)(1)(A) unless these defaults are cured.

Ford states that Gretter is in material breach of its franchise agreement in two respects: relocation of the Ford dealership to 214 Airport Road without Ford's consent, and the "change in usage" that resulted from locating a GM dealership at 201 Airport Road without Ford's consent. GM states that Gretter is in default under its franchise agreements because:  Ford vehicles are being sold and serviced at an exclusive GM location; placing Ford vehicle lines at an exclusive GM facility violates image and design requirements which results in the use of GM trademarks promoting Ford's products; and that due to this commingling the space is inadequate to meet GM's requirements.

The history of the dealerships and why the current operations did not constitute defaults under the franchise agreements was supplied by Thomas D. Gretter.  When asked about the GM agreement dated January 28, 2008 he stated that it was at that time that the building located at 201 Airport Road was remodeled to GM specifications and that was when the Ford vehicles were moved to 214 Airport Road.  GM's Dealer Network Manager testified that he visited Gretter to verify that it was operating a GM only dealership according to the terms of the franchise agreement.  He observed that a Ford showroom had been built into a corner of a large storage building located at 214 Airport Road.  He was informed that the smaller individual storage units along one side of the same large building were going to be converted to service bays.  Based upon this visit it was his understanding that the Ford dealership would be separate from the GM

Ex. A

dealership. A large lighted Ford sign on 214 Airport Road location was installed simply for "visual effect" not for the purpose of moving the dealership. The Ford sign was selected for this purpose solely because it was owned by Gretter and the GM sign was not. Thomas Gretter also stated that the Ford product line was moved across the street in 2010 because growth was being experienced in the GM line compared to Ford. That parcel had a gravel area that would hold about 80 vehicles. Both new Ford vehicles and used cars were located there. This nearby land was used to park cars but all Ford sales and service transactions continued to occur at 201 Airport Road. In spite of these developments Gretter contends that the Ford dealership was never "formally" relocated. It is more plausible to conclude that the changes and improvements made to 214 Airport Road were designed to meet GM's exclusive dealership expectations under its franchise agreements.

Non-monetary defaults exist under the terms and conditions of the franchise agreements with both Ford and GM. The Ford contract designated that the dealership be located at 201 Airport Road. That facility is now branded as a GM dealership. Gretter admits that it comingles the sales and service of Ford and GM vehicles at the 201 Airport Road location which is in violation of the exclusive provisions bargained for under the franchise agreement. Since 2001 GM franchises are designed to promote exclusive dealership locations, which was clearly the purpose of the parties' 2008 contracts. The operation of a dual facility is rare and would be based upon specific circumstances that do not apply to Gretter. While it could be true that it is not unusual for dealerships to sell and service multiple manufacturers, especially in smaller communities, such a business model was not approved by and is not acceptable to either Ford or GM.

Ex. A

Gretter's attempt to finesse its current operations to fit within both the Ford and GM franchise agreements is simply an effort to eat its cake and have it too which is not permitted under 11 U.S.C. § 365. "As a general principle, assumption or rejection by a debtor in possession or a trustee is an assumption or rejection of the entire executory contract. The Bankruptcy Code does not specifically allow for selective assumption or rejection." *In re STEAKS TO GO, INC.,* 226 B.R. 35, 38 (Bankr. E.D. MO 1998). Assumption of an executory contract is "*cum onere*" which allows the benefits of the contract to continue, but also imposes the obligation of performance under the contract terms. *Lewis Brothers Bakeries, Inc. v. Interstate Brands, Corp.* (*In re Interstate Bakeries Corp.*), 751 F.3d 955, 961 (8th Cir. 2014).

Gretter, Edwards and the Official Unsecured Creditors Committee assert that to the extent any defaults exist, those have been waived by Ford and GM's failure to previously notify Gretter that it was in violation of the franchise agreements. The legal authority cited in support of the waiver argument states that the parties' course of conduct can result in a waiver of a contract term. Application of this principle is not dispositive of the issues in this case and does not pre-empt the provisions of 11 U.SC. § 365. The language and context of the franchise agreements contemplate that the terms agreed to by the parties are being honored. Changes made by the dealer are subject to notice to the manufacturer. Gretter has not demonstrated that it complied with the notice provisions under the franchise agreements. Instead, it points to visits to the dealership facility by Ford service representatives and GM sales representatives as evidence of the manufacturers' knowledge which then translates into a course of conduct that constitutes a waiver of certain terms under the franchise agreements. At the time that a GM Dealer Network Manager visited Gretter, Ford and GM appeared to be divided between 201 and 214 Airport Road. Based upon that configuration there was no reason to suspect that the GM franchise

Ex. A

agreement was in default.[6] There is no proof that subsequent visits by the manufacturer representatives to the dealerships were related to inspection of the business for purposes of determining whether Gretter was in compliance with its franchise agreements. And even if they were, there is no evidence that any relevant information was provided to either Ford or GM in this regard.

The APA contained a provision that required Gretter to obtain the consent of Ford and GM to permit Edwards to continue to operate under the Franchise Agreements. When consent was not forthcoming Edwards waived enforcement of the APA term. Edwards also submitted information to Ford and GM in an effort to obtain the right to operate the dealerships it had purchased at the auction. The parties were unable to reach an agreement on terms. Consequently, Ford and GM are not barred from raising issues of default to Gretter's request for the assumption of the franchise agreements. *In re Cellnet Data Systems, Inc.,* 313 B.R. at 609.

Existence of a default does not preclude the renewal of a lease and assumption of the contract in bankruptcy. *See Coleman Oil Co. v. Circle K Corp.* (*In re Circle K Corp.*), 127 F.3d 904, 906 (9th Cir.1997). Gretter must demonstrate that it has the ability to promptly cure the default. No evidence was presented to establish that Gretter has either the intent or the ability to cure the identified defaults. Gretter has failed to meet the conditions of 11 U.S.C. § 365(b)(1) to obtain approval of the assumption of the Ford and GM franchise agreements.

Notwithstanding Gretter's inability to assume the franchise agreements "adequate assurance of future performance by the assignee of such contract or lease . . . whether or not there has been a default" will be addressed. 11 U.S.C. § 365(f)(3). "The assignee need not provide adequate assurance of all details of the contract or lease, only of material and

---

[6] At some point after this visit, the date of which is not clear from the record, Ford insignia appeared near the service department at 201 Airport Road.

economically significant contract terms. A contract term is material if it was integral to the bargained-for exchange and is economically significant if performance is required to give the contract counterparty the full benefit of its bargain." 3-365 Collier on Bankruptcy ¶ 365.09 (16th ed. 2015). Gretter's unauthorized operation of a dual facility without the consent of either Ford or GM does not inure to Edwards' advantage. Edwards states that it intends to continue to operate a dual facility which is contrary to, and does not comply with the terms of the franchise agreements relating to brand exclusivity, trademark usage, and location and space requirements. Ford and GM are not unreasonable in their expectation that the conditions of their franchise agreements will be honored. *In re Sapolin Paints, Inc.*, 5 B.R. 412, 421 (Bankr. E.D.N.Y. 1980). Although it may be that Edwards is successful in its other dealerships, financially stable and its performance would result in a better business partner for both Ford and GM, these factors do not apply the correct standard. The relevant inquiry is whether adequate assurance of future performance of the terms of the executory contracts that Gretter is requesting to be assumed and assigned has been demonstrated. Neither Edwards nor Gretter has met this burden under 11 U.S.C. § 365.

Gretter and Edwards ask the Court to apply Iowa Code Chapter 322A in reaching its decision on the Motions to Assume and Assign the franchise agreements. This statute "was primarily designed to assure the public that motor vehicle franchisers would not, without good cause, *terminate or discontinue* dealerships or open additional dealerships in any Iowa community." *Beckman v. Carson*, 372 N.W.2d 203, 207 (Iowa 1985) (emphasis added). Application of Iowa Code Chapter 322A would be misplaced for two reasons. First, neither Ford nor GM has taken action to terminate or discontinue their respective franchises. Second, Gretter filed bankruptcy with the intent of liquidating its assets in a 363 sale and to take advantage of the

Ex. A

protections afforded in that process. To now request that state law provisions be applied in lieu of the requirements under the bankruptcy code for the assumption or assignment of executory contracts is not appropriate. "While . . . many states believe that their public policy should provide special protections for the economic interest of local car dealerships, in the area of federal bankruptcy law those remedies run counter to the federal policy of bankruptcy reorganization and are therefore preempted." *American Suzuki Motor Corp*, 494 B.R. 466, 477 (Bankr. C.D. Cal. 2013). Gretter and Edwards were not prohibited from structuring the sale outside of bankruptcy if they believed there were advantages from the application of Iowa's franchise laws. Gretter's election to file a chapter 11 in order to avail itself of its benefits and protections comes with the consequence of application of 11 U.S.C. § 365 for treatment of the assignment and assumption of the franchise agreements.

      IT IS HEREBY ORDERED

1. The objection filed by Ford is sustained.

2. The objection filed by GM is sustained.

3. The Debtor's Motions to Assume and Assign Executory Contracts are denied.

                                      /s/ Anita L. Shodeen
                                      Anita L. Shodeen
                                      U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF IOWA**

In the Matter of Jointly Administered:

| | |
|---|---|
| **Gretter Autoland, Inc.** | Case No. **14-02831-als11** |
| Debtor(s) | |
| **Gretter Ford Mercury, Inc.** | Case No. **14-02832-als11** |
| Debtor(s) | |
| **Gretter Chevrolet Company** | Case No. **14-02833-als11** |
| Debtor(s) | |

October 9, 2015 Hearing on:
**Motion for Reconsideration of Order on Claims (#272), Joinder (#281), Objections (#283, #299, #304, #305, #306), and Response (#317)**

Appearances were noted on the record.

Gretter Exhibits A and B
Edwards Auto Plaza, Inc. Exhibit A
General Motors, LLC Exhibits A through H

**ORDER**
(date entered on docket: October 9, 2015)

Based upon the docket, filed documents, arguments of the parties at the time of hearing and the admitted exhibits

**It is hereby ORDERED that:**

1. The Objections are sustained.

2. The Motion for Reconsideration of Order is denied.

3. Today's record shall constitute the Court's findings and conclusions pursuant to Federal Bankruptcy Rules 7052 and 9014.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this order from the Clerk of Court:
☒ Electronic Filers in this Chapter Case
☐ Everyone in this Chapter Case
☐ Others:

Ex. B