# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
**110 E. Court Avenue, Ste 300**
**Des Moines, Iowa  50309**
**www.iasb.uscourts.gov**

In the Matter of: Gretter Autoland, Inc.          District Court Case No.   3-15-CV-117-SMR

Appeal Filed in Bankruptcy Court Case No. 14-02831-als7

## TRANSMITTAL OF RECORD ON APPEAL

Pending Related Appeals? no          If Yes, Appeal # _____

**Records transmitted by email:**
- ☑ Transcript      ☐ Transcript not ready
- ☑ Exhibits
- ☑ Designation of Record Documents

☐ **No Designation of Record filed by deadline**

By: Megan R. Weiss    Digitally signed by Megan R. Weiss
DN: cn=Megan R. Weiss, o=U.S. Bankruptcy Court,
ou, email=mrw@iasb.uscourts.gov, c=US
Date: 2015.11.23 11:06:32 -06'00'

Deputy Clerk
Phone No. (515) 323-2851

cc: Debtor(s), Appellant's atty, Appellee's atty, trustee, US Trustee

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Southern District of Iowa | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>GRETTER AUTOLAND, INC. | Case Number:<br><br>14-02831-11 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Washington State Bank, Washington, IA

Name and address where notices should be sent:
Attn: Steven A. Bohn, President
P O Box 311
Washington, IA 52353

Telephone number:  (319) 653-2151    email:  sbohn@washsb.com

Name and address where payment should be sent (if different from above):

Telephone number:                    email:

**COURT USE ONLY**

❑ Check this box if this claim amends a previously filed claim.

**Court Claim Number:_____**
    (*If known*)

Filed on:_____

❑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $_____3,214,649.44

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  Loans
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br><br>___ ___ ___ ___ | **3a. Debtor may have scheduled account as:**<br><br>_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❑ Real Estate  ❑ Motor Vehicle  ❑ Other
**Describe:**

**Value of Property:** $__UNKNOWN__

**Annual Interest Rate_____%** ❑ Fixed  or  ❑ Variable
(when case was filed)

        SEE ATTACHED

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

                $_____

**Basis for perfection:**  UCC-1 _____

**Amount of Secured Claim:** $____3,214,649.44

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

❑ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❑ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❑ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❑ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❑ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  H. Raymond Terpstra II
Title:  Attorney for Washington State Bank
Company:
Address and telephone number (if different from notice address above):                (Signature)                    4 · 2 · 15
3600 First Avenue NE, Suite 101                                                                                              (Date)
Cedar Rapids, IA 52402

Telephone number: (319) 364-2467    email: rterpstra@tewlaw.net
*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

In Re: Gretter Autoland, Inc.; Bankruptcy No. 14-02831-11

Attachment to Proof of Claim filed by
Washington State Bank, Washington, IA

4.  Annual Interest Rate:

4.95% on Loan No. xx5636 ($250,000.00)

6.95% on Loan No. xx0508 ($2,964,649.36)


7.  Documents:

Attached is:

- Promissory Note xx5636
- Promissory Note xx0508
- Commercial Security Agreement for Gretter Autoland, Inc.
- Commercial Security Agreement for Gretter Chevrolet Company
- Commercial Security Agreement for Gretter Ford Mercury, Inc.


Both Promissory Notes are guaranteed by one or more members of the Gretter family.  Both Notes are secured by Mortgages on non-estate real estate.  The Bank hopes that it is fully secured although that will be impossible to determine until all collateral has been liquidated. The Proof of Claim amount does not include any post-Petition unsecured credit extended to the Debtor.  The Debtor's affiliates are co-makers.

| | | |
|---|---|---|
| GRETTER AUTOLAND INC, GRETTER CHEVROLET CO. DBA GRETTER MOTOR CO. GRETTER FORD MERCURY DBA GRETTER FORD INC. P.O. BOX 847 WASHINGTON, IA 52353 | WASHINGTON STATE BANK 121 S MARION AVE WASHINGTON, IA 52353 | **5636** Loan Number _____ Date 11-03-2014 Maturity Date 12-03-2014 Loan Amount $ 250,000.00 Renewal Of _____ |
| **BORROWER'S NAME AND ADDRESS** "I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS** "You" means the lender, its successors and assigns. | U7IG   KWL/CI/9904 |

61126268  0

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 _____ Dollars $ 250,000.00

☒ **Single Advance:** I will receive all of this principal sum on 11-03-2014 _____. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 11-03-2014 _____ at the rate of 4.650 % per year until 12-03-2014

☐ **Variable Rate:** This rate may then change as stated below.

☐ Index Rate: The future rate will be _____ the following index rate: _____

☐ No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ Frequency and Timing: The rate on this note may change as often as _____

A change in the interest rate will take effect _____

☐ Limitations: During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:

☐ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☒ at a rate equal to 18.00%

☐ **LATE CHARGE:** If a payment is made more than _____ days after it is due, I agree to pay a late charge of _____

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which  ☐ are  ☐ are not  included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:

1 PAYMENT OF $251,031.25 ON 12-03-2014.

TX311290ILendingComal08/08
Note pdf
07/14D File 11/4/2014

☐ **Unpaid Interest:** Any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of Lender's demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:**

☒ If checked, this note is a credit agreement subject to Iowa Code § 535.17 and the following notice is applicable to this note.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THESE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):

SAS DATED 3-23-04 AND 8-3-10; REMS DATED 7-8-08 & 8-3-10

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is BUSINESS: OPERATIONS [RENEW EXISTING NOTE]

**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

GRETTER AUTOLAND INC, GRETTER CHEVROLET CO. DBA GRETTER MOTOR CO. GRETTER

THOMAS D. GRETTER, PRESIDENT AUTOLAND INC.

THOMAS D. GRETTER, PRESIDENT, GRETTER CHEVROLET

THOMAS D. GRETTER, PRESIDENT, GRETTER FORD INC.

Signature for Lender

KEITH W LAZAR, PRESIDENT

**UNIVERSAL NOTE**

Exsera® ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-IA 3/4/2002

(page 1 of 2)

| GRETTER FORD MERCURY INC, GRETTER AUTOLAND INC GRETTER CHEVROLET COMPANY<br>P.O. BOX 947          G112293 0<br>WASHINGTON, IA 52353   G112668 0<br>                      G112555 0<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | WASHINGTON STATE BANK<br>121 S MARION AVE<br>WASHINGTON, IA 52363<br><br><br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Loan Number ___ 30508<br>Date 08.03.2010<br>Maturity Date 08-01-2011<br>Loan Amount $ 3,000,000.00<br>Renewal Of<br>LT/IG Loc KWL/CU9804 |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of THREE MILLION AND NO/100 _____

_____ Dollars $ 3,000,000.00 _____

☐ **Single Advance:** I will receive all of this principal sum on _____ . No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On 08-03-2010 _____
I will receive the amount of $ _____ and future principal advances are contemplated.
Conditions: The conditions for future advances are _____

☒ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on 08-01-2011 .
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 08-03-2010 _____ at the rate of 5.950 % per year until 08-01-2011 .

☐ **Variable Rate:** This rate may then change as stated below.
  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____
_____
_____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____
    A change in the interest rate will take effect _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.
  ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/365 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☒ at a rate equal to 15.00% _____

☐ **LATE CHARGE:** If a payment is made more than _____ days after it is due, I agree to pay a late charge of _____

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
INTEREST ON THE AMOUNT OF CREDIT OUTSTANDING DUE AT MATURITY AND PRINCIPAL DUE ON 08-01-2011. ____ ___ ___

V barcode G112293 Loan # 30508
Note.pdf
DYMD File #442010

☐ **Unpaid Interest:** Any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of Lender's demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:**

☒ If checked, this note is a credit agreement subject to Iowa Code § 535.17 and the following notice is applicable to this note.
  **IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THESE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br><br>SA DATED 3-23-04; 8-3-10 AND REMS DATED 7-8-08; 8-3-10<br><br>[This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.] | **PURPOSE:** The purpose of this loan is BUSINESS: LOC FOR 2010-2011<br><br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE** (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.<br>GRETTER FORD MERCURY INC, GRETTER AUTOLAND INC GRETTER CHEVROLET<br><br>X _____ X _____<br>JOHN D. GRETTER, PRES/SEC (GRM INC. AND OA INC.)<br><br>X _____ X _____<br>THOMAS D. GRETTER, VICE PRES. (GFM INC. AND OA INC.) |

Signature for Lender

_____

KEITH W LAZAR, PRESIDENT

X _____
THOMAS D. GRETTER, PRES/SEC. (GCC)

X _____
JOHN D. GRETTER, VICE PRES. (GCC)

**UNIVERSAL NOTE**
Express ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-IA 3/4/2002         (page 1 of 2)

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| GRETTER AUTOLAND INC<br>P.O. BOX 947<br>WASHINGTON, IA 52353 | WASHINGTON STATE BANK<br>121 S MARION AVE<br>WASHINGTON, IA 52353 |

Type: ☐ individual ☐ partnership ☐ corporation ☐ _____
State of organization/registration (if applicable)  IA
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 08-03-2010 .

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____ . (Borrower) owes to Secured Party: .

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☒ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☒ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☐ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| GRETTER AUTOLAND INC | WASHINGTON STATE BANK |
| _signature_<br>JOHN D. GRETTER<br>PRES./SEC-TREAS | |
| _signature_<br>THOMAS D. GRETTER<br>VICE PRESIDENT | |

Experº   © 2000 Bankers Systems, Inc., St. Cloud, MN  Form SA-BUS-IA  12/12/2000

(page 1 of 2)

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| GRETTER CHEVROLET COMPANY<br>411 E. BROADWAY<br>WASHINGTON, IA 52353<br>Keota, IA 52248 | WASHINGTON STATE BANK<br>121 S MARION AVE<br>WASHINGTON, IA 52353 |

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable)  IA _____
☐ If checked, refer to addendum for additional Debtors and signatures.

*16802*

# COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 03-23-2004 _____

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____

_____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☐ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| GRETTER CHEVROLET COMPANY | WASHINGTON STATE BANK |
| THOMAS D. GRETTER<br>PRESIDENT | KEITH W LAZAR<br>PRESIDENT |
| JOHN D. GRETTER<br>V-PRESIDENT | |

Experi® ©2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS-IA 12/12/2000 *(page 1 of 2)*

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| GRETTER FORD MERCURY, INC.<br>201 AIRPORT ROAD<br>WASHINGTON, IA 52353 | WASHINGTON STATE BANK<br>121 S MARION AVE<br>WASHINGTON, IA 52353 |

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable)  IA _____
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 03-23-2004 _____

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____
_____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☐ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| GRETTER FORD MERCURY, INC. | WASHINGTON STATE BANK |
| _____ | _____ |
| JOHN D. GRETTER | KEITH W LAZAR |
| PRESIDENT | PRESIDENT |
| _____ | |
| THOMAS D. GRETTER | |
| V-PRESIDENT | |

Experè  ©2000 Bankers Systems, Inc., St. Cloud, MN  Form SA-BUS-IA  12/12/2000  *(page 1 of 2)*

**B10 (Official Form 10) (04/13)**

| UNITED STATES BANKRUPTCY COURT Southern District of Iowa | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor:<br>Gretter Autoland, Inc. | Case Number:<br>14–02831 |

**FILED**
**U.S. Bankruptcy Court**
**Southern District of Iowa**

**4/7/2015**

**Virginia L. Satterstrom, Clerk**
**COURT USE ONLY**

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*
*You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**James Michael Gretter**

Name and address where notices should be sent:
James Michael Gretter
911 Main St, 30th Floor
Kansas City, MO 64105

Telephone number: 816–460–2823     email: JGretter@fwpclaw.com

☐ Check this box if this claim
   amends a previously filed claim.

**Court Claim Number:**                    *(If known)*
Filed on:

Name and address where payment should be sent (if different from above):

☑ Check this box if you are aware
   that anyone else has filed a proof
   of claim relating to this claim.
   Attach copy of statement giving
   particulars.

Telephone number:        email:

**1. Amount of Claim as of Date Case Filed:**    $    250000.00
If all or part of the claim is secured, complete item 4. If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2.  Basis for Claim:**  surety contingent subrogation right  (See instruction #2)

| **3.  Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

**4.  Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**
**Value of Property: $**
**Annual Interest Rate (when case was filed)**    % ☐ Fixed or ☐ Variable

Amount of arrearage and other charges, as of the time case was filed,
included in secured claim, if any:

$

**Basis for perfection:**    contingent UCC–1

**Amount of Secured Claim: $**    250000.00

**Amount Unsecured:**    $    0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).

**Amount entitled to priority:**

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_).

$

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open–end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8) Check the appropriate box.

☐ I am the creditor.     ☑ I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)     ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: John D. Hintze
Title:
Company: Ahlers & Cooney, P.C.
Address and telephone number (if different from notice address above):

 

s/ John D. Hintze       4/7/2015
(Signature)       (Date)

Telephone number:    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

DOC. NO. **10-2835** LM
BOOK 2010 PAGE 2835
FILED FOR RECORD
#/2
2010 AUG 20 AM 10: 33

CONNIE PENCE, RECORDER
WASHINGTON CO., IA. SS.
FEE $ 64.00 Pd

──── State of Iowa ────      ──── Space Above This Line For Recording Data ────

**Prepared By:** KEITH W LAZAR
WASHINGTON STATE BANK
121 S MARION AVE,
WASHINGTON, IA 52353  (319) 653-2151

**Return To:**  WASHINGTON STATE BANK
121 S MARION AVE
WASHINGTON, IA  52353

# OPEN-END REAL ESTATE MORTGAGE
### (With Future Advance Clause)

1.  **DATE AND PARTIES.** The date of this Mortgage is 08-03-2010 _____ and the parties and their addresses are as follows:

    **MORTGAGOR:** THOMAS D. GRETTER;
    PAULETTE A. GRETTER;
    JAMES M. GRETTER; TRACY
    GRETTER, HUSBAND AND
    WIFE  P.O. BOX 947  WASHINGTON, IA  52353

    ☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors. The Addendum is located on _____ .

    **LENDER:** WASHINGTON STATE BANK
    ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF
    IOWA
    121 S MARION AVE
    WASHINGTON, IA  52353

2.  **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, warrants, conveys and mortgages to Lender the following described property: (If the legal description of the property is not on page one of this Mortgage, it is located on ATTACHMENT "A" .)

**IOWA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT**
(NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)
Exṗereṡ ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

*(page 1 of 9)*

The property is located in _____ at _____
                                      (County)

_____ , _____ , Iowa _____
            (Address)                        (City)                      (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

NOTICE: THIS MORTGAGE SECURES CREDIT IN THE AMOUNT OF $ 249,900.00 . LOANS AND ADVANCES UP TO THIS AMOUNT, TOGETHER WITH INTEREST, ARE SENIOR TO INDEBTEDNESS TO OTHER CREDITORS UNDER SUBSEQUENTLY RECORDED OR FILED MORTGAGES AND LIENS.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Mortgage at any one time shall not exceed the amount stated above. This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Mortgage and does not apply to advances (or interest accrued on such advances) made under the terms of this Mortgage to protect Lender's security and to perform any of the covenants contained in this Mortgage. Future advances are contemplated and, along with other future obligations, are secured by this Mortgage even though all or part may not yet be advanced. Nothing in this Mortgage, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount, interest rate, maturity date)*: PROMISSORY NOTE EXECUTED BY GRETTER FORD MERCURY INC.; GRETTER CHEVROLET COMPANY; GRETTER AUTOLAND, INC. DATED EVEN DATE HEREWITH IN FAVOR OF THE WASHINGTON STATE BANK.

   B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt and whether or not such future advances or obligations are incurred for any purpose that was related or unrelated to the purpose of the Evidence of Debt.

   C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

   D. All additional sums advanced and expenses incurred by *Lender for insuring, preserving or* otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.

   E. Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt.

   If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required *disclosure about* this Mortgage or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage.

6. **WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, warrant, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease *payments, ground rents, utilities,* and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the

_____  _____  _____  _____ *(page 2 of 9)*

Experé ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released.

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
    A. Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.
    B. The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.
    No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any

_____    _____    _____    _____    *(page 3 of 9)*

Exᴘᴇʀᴇ̄ ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN   Form AGCO-RESI-IA   10/24/2005

amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, warrants, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Mortgagor will be in default if any of the following occur:

   A. Any party obligated on the Secured Debt fails to make payment when due;

   B. A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;

   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;

   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;

_____  _____  _____  _____ (page 4 of 9)

Experé ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

    E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;

    F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or

    G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**17. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Mortgage in a manner provided by law if this Mortgagor is in default.

Upon a default by the Mortgagor, the Lender may take possession of the Property itself or through a court appointed receiver, without regard to the solvency or insolvency of the Mortgagor, the value of the Property, the adequacy of the Lender's security, or the existence of any deficiency judgment, and may operate the Property and collect the rents and apply them to the costs of operating the Property and/or to the unpaid debt.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**18. REDEMPTION.** Mortgagor agrees that in the event of foreclosure of this Mortgage, at the sole discretion of Lender, Lender may elect to reduce or extend the period of redemption for the sale of the Property to a period of time as may then be authorized under the circumstances and under any section of Iowa Code Chapter 628, or any other Iowa Code section, now in effect or as may be in effect at the time of foreclosure.

**19. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

**20. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:

    A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

    B. Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

    C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

                                                   *(page 5 of 9)*

D. Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and *nature* of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any *Hazardous* Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant *are in* compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage.

L. Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

21. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

22. **INSURANCE.** Mortgagor agrees to maintain insurance as follows:

A. Mortgagor shall keep the improvements now existing or hereafter built on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.          *(page 6 of 9)*

*Experⓒ* ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the *insurance carrier has offered to settle a claim*, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. *Mortgagor agrees to maintain rental loss or business interruption insurance*, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

23. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

24. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under *this Mortgage and Lender's lien* status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

25. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of *Mortgagor and Lender*.

If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guarantied, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

26. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to *its* terms, that *section or clause* will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage.

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

28. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives any rights relating to reinstatement, the marshalling of liens and assets, all rights of dower and distributive share and all *homestead exemption rights* relating to the Property.

29. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this *Mortgage*:

    ☐ **Construction Loan.** This Mortgage secures an obligation incurred for the construction of an improvement on the Property.

    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

_____ _____ _____ _____ *(page 7 of 9)*

*Exc̄ered* ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Mortgagor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Mortgage is sufficient as a financing statement.

30. **OTHER TERMS.** If checked, the following are applicable to this Mortgage:

☐ **Purchase Money Mortgage.** This is a purchase money mortgage as defined by Iowa law.

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Mortgage will remain in effect until released.

☐ **Agricultural Property.** Mortgagor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Mortgagor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments. Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated

_____ .

Entity Name: _____

_(Signature)_ THOMAS D. GRETTER                    8-19-10 _(Date)_

_(Signature)_ PAULETTE A. GRETTER                   8-19-10 _(Date)_

_(Signature)_ JAMES M. GRETTER                      8-2-10 _(Date)_

_(Signature)_ TRACY GRETTER                         8-8-10 _(Date)_

_(page 8 of 9)_

Experº ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

**ACKNOWLEDGMENT:**

(Individual)

STATE OF <u>IOWA</u>_____, COUNTY OF <u>WASHINGTON</u>_____ } ss.

On this <u>3RD</u>____ day of <u>AUGUST, 2010</u>_____ before me, a Notary Public in the
state of Iowa, personally appeared <u>THOMAS D. GRETTER; PAULETTE A. GRETTER;</u>
<u>JAMES M. GRETTER; TRACY GRETTER, HUSBAND AND WIFE</u>_____
to me known to be the person(s) named in and who executed the foregoing instrument, and
acknowledged that <u>he/she/they</u>_____
executed the same as <u>his/her/their</u>_____ voluntary act and deed.

My commission expires: ~~03-01-2013~~

~~KEITH LAZAR~~     (Notary Public)   Julie A See

JULIE A. SEE
Commission Number 165976
My Comm. Exp. 7-31-2013

(Business
or Entity
Acknowl-
edgment)

STATE OF _____, COUNTY OF _____ } ss.

On this ____ day of _____ before me, a Notary Public in the
state of Iowa, personally appeared _____

to me personally known, who being by me duly sworn or affirmed did say that that person is

_____

of said entity, that (the seal affixed to said instrument is the seal of said entity or no seal has
been procured by said entity) and that said instrument was signed and sealed, if applicable, on
behalf of the said entity by authority of its board of directors/partners/members and the said

_____

acknowledged the execution of said instrument to be the voluntary act and deed of said entity
by it voluntarily executed.

My commission expires: _____

_____
(Notary Public)

(In the following statement "I" means the Mortgagor.) I understand that homestead property is in
many cases protected from the claims of creditors and exempt from judicial sale; and that
by signing this contract, I voluntarily give up my rights to this protection for this property
with respect to claims based upon this contract.

_____ _____   8-19-10
(Signature) THOAMS D. GRETTER & PAULETTE A. GRETTER    (Date)

_____ 8-7-10   Tracy Gretter 8-8-10
(Signature) JAMES M. GRETTER AND TRACY GRETTER    (Date)

_____ _____ _____ _____   (page 9 of 9)

Experia ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

State of _Missouri_ ,

} ss

County of _Jackson_ .

On this _7_ day of _August_ before me, a Notary in the State of _Missouri_, personally appeared _James Greeter_ to me known to be the person named in and who executed the foregoing instrument, and acknowledged that he/she as his/her voluntary act and deed.

_____
Notary Public

My commission expires: _9/9/2013_

**ANNA KNUTSON**
Notary Public - Notary Seal
**STATE OF MISSOURI**
Jackson County
My Commission Expires: Sept 9, 2013
Commission # 08865753

State of _Kansas_ ,

} ss

County of _Sedgwick_ .

On this _8th_ day of _August_ before me, a Notary in the State of _Kansas_ , personally appeared _Traci Greiter_ to me known to be the person named in and who executed the foregoing instrument, and acknowledged that he/she as his/her voluntary act and deed.

_Christine Zimmerman_
Notary Public

My commission expires:

_10/22/2012_

CHRISTINE ZIMMERMAN
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 10/22/2012

## ATTACHMENT "A"

The North One Half (N ½) of the North East Fractional Quarter (NEfr ¼) of Section Number Three (3), in Township Number Seventy-six (76) North, of Range Number Nine (9) West of the Fifth (5th) Principal Meridian, Washington County, Iowa.

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Southern District of Iowa | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor:<br><br>GRETTER AUTOLAND, INC. | Case Number:<br><br>14-02831-11 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Washington State Bank, Washington, IA | |
|---|---|
| | **COURT USE ONLY** |
| Name and address where notices should be sent:<br>Attn: Steven A. Bohn, President<br>P O Box 311<br>Washington, IA 52353<br><br>Telephone number: (319) 653-2151    email: sbohn@washsb.com | ❑ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number:         email: | ❑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**    $_____3,214,649.44_____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Loans
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>_ _ _ _ | **3a. Debtor may have scheduled account as:**<br><br>_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

| **4. Secured Claim (See instruction #4)**<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>**Nature of property or right of setoff:** ❑ Real Estate  ❑ Motor Vehicle  ❑ Other<br>**Describe:**<br><br>**Value of Property:** $__UNKNOWN__<br><br>**Annual Interest Rate**_____% ❑ Fixed  or  ❑ Variable<br>**(when case was filed)**<br>                    SEE ATTACHED | **Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**<br><br>$_____<br><br>**Basis for perfection:** UCC-1_____<br><br>**Amount of Secured Claim:** $___3,214,649.44___<br><br>**Amount Unsecured:** ·$_____ |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ❑ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ❑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ❑ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). | |
|---|---|---|---|
| ❑ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ❑ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ❑ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___). | **Amount entitled to priority:**<br><br>$_____ |

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13) 2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| 8. Signature: (See instruction #8) |
|---|

Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
or their authorized agent.   (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   H. Raymond Terpstra II
Title:   Attorney for Washington State Bank
Company:
Address and telephone number (if different from notice address above):
3600 First Avenue NE, Suite 101                     (Signature)                     (Date)   4 · 2 · 15
Cedar Rapids, IA 52402

Telephone number: (319) 364-2467     email: rterpstra@tewlaw.net

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

In Re: Gretter Autoland, Inc.; Bankruptcy No. 14-02831-11

Attachment to Proof of Claim filed by
Washington State Bank, Washington, IA

4. Annual Interest Rate:

4.95% on Loan No. xx5636 ($250,000.00)

6.95% on Loan No. xx0508 ($2,964,649.36)

7. Documents:

Attached is:

- Promissory Note xx5636
- Promissory Note xx0508
- Commercial Security Agreement for Gretter Autoland, Inc.
- Commercial Security Agreement for Gretter Chevrolet Company
- Commercial Security Agreement for Gretter Ford Mercury, Inc.

Both Promissory Notes are guaranteed by one or more members of the Gretter family. Both Notes are secured by Mortgages on non-estate real estate. The Bank hopes that it is fully secured although that will be impossible to determine until all collateral has been liquidated. The Proof of Claim amount does not include any post-Petition unsecured credit extended to the Debtor. The Debtor's affiliates are co-makers.

| | | | |
|---|---|---|---|
| GRETTER AUTOLAND INC. GRETTER CHEVROLET CO. DBA GRETTER MOTOR CO. GRETTER FORD MERCURY DBA GRETTER FORD INC. P.O. BOX 847 WASHINGTON, IA 52353 | WASHINGTON STATE BANK 121 S MARION AVE WASHINGTON, IA 52353 | | **5636** |
| | | Loan Number | |
| 61126168 0 | | Date 11-03-2014 | |
| | | Maturity Date 12-03-2014 | |
| | | Loan Amount $ 250,000.00 | |
| **BORROWER'S NAME AND ADDRESS** "I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS** "You" means the lender, its successors and assigns. | Renewal Of | |
| | | LT/G      KWL/CU/9804 | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of TWO HUNDRED FIFTY THOUSAND AND NO/100
_____ Dollars $ 250,000.00

☒ **Single Advance:** I will receive all of this principal sum on 11-03-2014 _____. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 11-03-2014 _____ at the rate of 4.650 %
per year until 12-03-2014 _____.

☐ **Variable Rate:** This rate may then change as stated below.

☐ Index Rate: The future rate will be _____ the following index rate: _____

☐ No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ Frequency and Timing: The rate on this note may change as often as _____
A change in the interest rate will take effect _____

☐ Limitations: During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
_____ %. The rate may not change more than _____ % each _____

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.      ☐ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☒ at a rate equal to 15.00%

☐ **LATE CHARGE:** If a payment is made more than _____ days after it is due, I agree to pay a late charge of _____

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which  ☐ are  ☐ are not  included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
1 PAYMENT OF $251,031.26 ON 12-03-2014.

```
TX011250XLendingXcentralX008
Note pdf
07/140 File 11/4/2014
```

☐ **Unpaid Interest:** Any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of Lender's demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:**

☒ If checked, this note is a credit agreement subject to Iowa Code § 535.17 and the following notice is applicable to this note.
**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THESE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
SAS DATED 3-23-04 AND 8-3-10; REMS DATED 7-8-08 & 8-3-10
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is BUSINESS: OPERATIONS [RENEW EXISTING NOTE]
**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.**
GRETTER AUTOLAND INC. GRETTER CHEVROLET CO. DBA GRETTER MOTOR CO. GRETTER

THOMAS D. GRETTER, PRESIDENT AUTOLAND INC.

THOMAS D. GRETTER, PRESIDENT, GRETTER CHEVROLET

THOMAS D. GRETTER, PRESIDENT, GRETTER FORD, INC.

Signature for Lender

KEITH W LAZAR, PRESIDENT

**UNIVERSAL NOTE**
Experi® ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-IA  3/4/2002                                  (page 1 of 2)

| GRETTER FORD MERCURY INC. GRETTER AUTOLAND INC. GRETTER CHEVROLET COMPANY<br>P.O. BOX 947    G112293 0<br>WASHINGTON, IA 52353    G112668 0<br>                              G112555 0<br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | WASHINGTON STATE BANK<br>121 S MARION AVE<br>WASHINGTON, IA 52363<br><br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Loan Number ___ 50508<br>Date 08-03-2010<br>Maturity Date 08-01-2011<br>Loan Amount $ 3,000,000.00<br>Renewal Of ___<br>LMTG Loc KWL/CU9604 |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of **THREE MILLION AND NO/100** _____

_____ Dollars $ **3,000,000.00** _____

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On **08-03-2010**

I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

_____

☒ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on **08-01-2011**.

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from **08-03-2010** at the rate of **6.950** % per year until **08-01-2011**.

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____

_____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____

A change in the interest rate will take effect _____

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:

☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.

☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a **ACTUAL/365** basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☒ at a rate equal to **15.00%** _____

☐ **LATE CHARGE:** If a payment is made more than _____ days after it is due, I agree to pay a late charge of _____

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:

**INTEREST ON THE AMOUNT OF CREDIT OUTSTANDING DUE AT MATURITY AND PRINCIPAL DUE ON 08-01-2011.** ___ __ ___

||||||||| (barcode)

V loan note 0/12293 Loand 50508
Note.pdf
DYMO File 8/4/2010

☐ **Unpaid Interest:** Any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of Lender's demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:**

☒ If checked, this note is a credit agreement subject to Iowa Code § 535.17 and the following notice is applicable to this note.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THESE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br>**SA DATED 3-23-04; 8-3-10 AND REMS DATED 7-8-08; 8-3-10**<br>[This section is for your internal use. Failure to list a security document does not mean the agreement will not secure this note.] | **PURPOSE:** The purpose of this loan is **BUSINESS: LOC FOR 2010-2011**<br><br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE** (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.<br>GRETTER FORD MERCURY INC. GRETTER AUTOLAND INC. GRETTER CHEVROLET |

Signature for Lender

_____    JOHN D. GRETTER, PRES/SEC (GFM INC. AND OA INC.)

_____    THOMAS D. GRETTER, VICE PRES. (GFM INC. AND OA INC.)

**KEITH W LAZAR, PRESIDENT**    THOMAS D. GRETTER, PRES/SEC. (GCC)

_____    JOHN D. GRETTER, VICE PRES. (GCC)

UNIVERSAL NOTE
Exper§§ ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-IA 3/4/2002                    *(page 1 of 2)*

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| GRETTER AUTOLAND INC<br>P.O. BOX 947<br>WASHINGTON, IA 52363 | WASHINGTON STATE BANK<br>121 S MARION AVE<br>WASHINGTON, IA 52363 |

Type: ☐ individual ☐ partnership ☐ corporation ☐ _____
State of organization/registration (if applicable) IA
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 08-03-2010

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☒ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☒ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☐ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

| SIGNATURES. Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement. | |
|---|---|
| **DEBTOR** | **SECURED PARTY** |
| GRETTER AUTOLAND INC | WASHINGTON STATE BANK |
| _signature_<br>JOHN D. GRETTER<br>PRES./SEC-TREAS | |
| _signature_<br>THOMAS D. GRETTER<br>VICE PRESIDENT | |

Experts © 2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS-IA 12/12/2000

*(page 1 of 2)*

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| GRETTER CHEVROLET COMPANY<br>411 E. BROADWAY<br>WASHINGTON, IA 52353<br>~~Keota~~, IA 52248 | WASHINGTON STATE BANK<br>121 S MARION AVE<br>WASHINGTON, IA 52353 |

16802

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) __IA__ _____
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is __03-23-2004__ _____

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____

_____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☐ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| GRETTER CHEVROLET COMPANY | WASHINGTON STATE BANK |
| _signature_ | _signature_ |
| THOMAS D. GRETTER<br>PRESIDENT | KEITH W LAZAR<br>PRESIDENT |
| _signature_ | |
| JOHN D. GRETTER<br>V-PRESIDENT | |

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| GRETTER FORD MERCURY, INC.<br>201 AIRPORT ROAD<br>WASHINGTON, IA 52353 | WASHINGTON STATE BANK<br>121 S MARION AVE<br>WASHINGTON, IA 52353 |

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____

State of organization/registration (if applicable) __IA__

☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is __03-23-2004__

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____

_____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☐ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| GRETTER FORD MERCURY, INC. | WASHINGTON STATE BANK |
| JOHN D. GRETTER<br>PRESIDENT | KEITH W LAZAR<br>PRESIDENT |
| THOMAS D. GRETTER<br>V-PRESIDENT | |

Exper◆ ©2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS-IA 12/12/2000

*(page 1 of 2)*