# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re GRETTER AUTOLAND, INC., | Case No. 14-02831-ALS11[1] |
| Debtor. | Chapter 11 |

## ALLY FINANCIAL INC.'S MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY

Secured Creditor, Ally Financial Inc. ("Ally"), submits its Motion for Relief from the Automatic Stay authorizing it to foreclose its security interest against Debtors' vehicles and other collateral identified below, respectfully showing the Court as follows:

Ally hereby moves the Court for relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause on the grounds that Gretter Autoland, Inc. and Gretter Ford Mercury, Inc. (the "Debtor") has defaulted on the obligations secured by the vehicles and other collateral and Ally's interest in the collateral is not adequately protected, and pursuant to 11 U.S.C. §362(d)(2) on the grounds that there is no equity in the collateral for Debtor or the estate and it is not needed for Debtor's reorganization.

The motion is based upon this Motion for Relief from Stay with Memorandum of Points and Authorities, Ally's Opposition to Emergency Motion

---

[1] Jointly administered with: *In re Gretter Ford Mercury, Inc.*, Case No. 14-02832-ALS11; and *In re Gretter Chevrolet Company*, Case No. 14-02833-ALS11.

Authorizing Use of Cash Collateral [*Docket No. 24*], the Stipulation Authorizing Debtor-In-Possession to Use Cash Collateral and for Adequate Protection [*Docket No. 45*] by and between Debtor, Washington State Bank ("WSB") and Ally ("Cash Collateral Stipulation"), the Debtor's Bankruptcy Schedules [*Docket No. 47*], the Court's Order approving the Cash Collateral Stipulation [*Docket No. 55*], all other papers and pleadings on file in Debtor's bankruptcy case, and such other evidence as may be presented at any hearing on this matter.

## I.    INTRODUCTION

Ally is Debtor's "floor plan" or "inventory" lender and financed Debtor's acquisition of its inventory of cars and trucks for resale to consumers. Ally has a perfected, first priority security interest in Debtor's inventory of vehicles as well as all parts, furniture, fixtures, equipment and general intangibles (primarily the franchise value), and the proceeds generated by the sale of those assets ("the Collateral").

Although Ally has consented to the use of its cash collateral pursuant to the terms of the Cash Collateral Stipulation, Debtor has not complied with the agreed upon benchmarks associated with a sale of the dealership assets. Ally asserts there is no equity in the collateral and no "equity cushion" for adequate protection.

The vehicles comprising the large portion of Ally's Collateral, are depreciating assets. Before filing its bankruptcy petition, Debtor sold or transferred eighty-five (85) vehicles and failed to pay Ally. These 85 vehicles total over $3 million in unpaid loan advances for which the vehicle collateral is gone. The principal loan balance owed to Ally is approximately $10 million. According to Debtor's Bankruptcy Schedules, the value of the vehicles remaining in inventory is $6,167,676.14. The Debtor values the remaining non-vehicle assets comprised of parts and accessories, furniture, fixtures and equipment at less than $300,000. Based on the foregoing values, Ally maintains it is substantially undersecured

given that the remaining collateral has a total value of less than $6,500,000. There is no equity in the collateral and no "equity cushion" for adequate protection. In addition, Ally has learned that Debtor has failed to pay post-petition insurance premiums for insurance that protects Ally's vehicle collateral and, absent payment of the premiums, that this insurance will lapse, further undermining adequate protection of the collateral.

Debtor has no post-petition financing, so it is unable to acquire new inventory on a post-petition basis. There is no basis for any value attributable to the franchises because any franchise value can only be realized through a sale of dealership assets and a corresponding assignment of the franchise executory agreements with General Motors LLC and Ford Motor Company. Both prior to and subsequent to the bankruptcy filing, Debtor sought to sell the dealership but has been unable to consummate a sale.

The Debtor is not operating as a going concern. It is severely undercapitalized and is unable to pay its ordinary business expenses except through the use of Ally's and WSB's cash collateral and through receipt of advances from WSB. Under these circumstances, there is little prospect for a reorganization.

## II.   STATEMENT OF FACTS

1. On December 1, 2014 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Iowa (the "Bankruptcy Court").

2. Debtor is an automobile dealership engaged in the business of selling and leasing vehicles to retail customers and servicing vehicles for customers.

3. Prior to the Petition Date, Ally provided Debtor financing for Debtor's acquisition of vehicle inventory to be used in its dealership operations. Generally speaking, Debtor entered into wholesale financing agreements and other

loan agreements with Ally, as well as security agreements granting Ally a lien in the inventory financed, as well as the proceeds, products, rents, issues and profits of such inventory. The financing agreements, security agreements and all related ancillary documents entered into in financing individual vehicles are hereafter referred to as the "Loan Documents". The collateral pledged to secure the Loan Documents is hereinafter referred to as the "Collateral". The titles and dates of the Loan Documents are identified in Exhibit A hereto and copies of the Loan Documents are attached to Ally's Opposition to Emergency Motion Authorizing Use of Cash Collateral [*Docket No. 24*].

4. The interests granted to secure the amounts financed by Ally are evidenced by UCC-1 Financing Statements filed in the State of Iowa, and thus, Ally holds a properly perfected lien in the Collateral. The filing numbers and dates of the UCC-1s are also set forth on Exhibit A hereto and copies of the UCC-1s are attached to Ally's Opposition to Emergency Motion Authorizing Use of Cash Collateral [*Docket No. 24*].

5. Debtor is indebted to Ally in an amount that exceeds $10 million[2] with interest and other charges continuing to accrue. The indebtedness owing to Ally is secured as Ally holds a pre-petition lien, in first position, in the Collateral, including Debtor's franchises and any proceeds therefrom.

6. Debtor's operating revenue is primarily generated through the sales and leasing of the financed vehicles.

7. Due to pre-petition events of default and other acts of Debtor, Ally asserts and Debtor does not dispute that Ally is undersecured in an amount that

---

[2] As of October 17, 2014, the Debtor's total principal indebtedness under their Loan Agreements with Ally is approximately $10,114,629.01 (exclusive of attorneys' fees). Interest and other charges continue to accrue daily as determined by the Loan Agreements. [*Docket No. 45*].

exceeds $3,500,000 primarily arising from sales of vehicle Collateral and failure to pay Ally for those sales under the terms of the Loan Documents.[3]

8. On December 23, 2014, Debtor, WSB and Ally entered into a Cash Collateral Stipulation. Cash Collateral Stipulation [*Docket No. 45*]. The Court, with certain modifications, approved the Cash Collateral Stipulation by Court Order entered January 6, 2015. [*Docket No. 55*].

9. On December 30, 2014, the Debtor filed its Bankruptcy Schedules listing the value of its vehicle inventory at 6,167,676.14,[4] and the value of its non-vehicle assets (comprised of parts and accessories, furniture, fixtures and equipment) at $272,510.13.[5] [*Docket No. 47*].

10. As a condition to the Debtor's use of cash collateral under the Cash Collateral Stipulation, Debtor was required to:

    a. Enter into an asset purchase agreement and file with the Bankruptcy Court a §363 motion to approve an asset sale and a §365 motion to assume and assign the GM and Ford Sales and Service Agreements and all related rights (the "Franchises") on or before December 31, 2014;

---

[3] The Debtor is in default of its obligations to Ally under their respective Loan Agreements with Ally because as of October 17, 2014, the Debtor has sold 85 vehicles and has failed to repay Ally the amounts advanced by Ally to Debtor to acquire those vehicles totaling $3,111,364, 80. This creates a sales-out–of-trust or "SOT" condition. This is a serious breach of the Loan Agreements because Ally has lost its vehicle collateral and the Debtor has received the proceeds from the sale or lease of those vehicles and used the money for other purposes—effectively reducing Ally's Collateral that secures its loans to the Debtor. [*Docket No. 24*].

[4] In Schedule B, the Debtor values its remaining new car inventory at $5,842,905.65 and used car inventory at $324,770.49. [*Docket No. 47*].

[5] In Schedule B, the Debtor values it office equipment, furnishings and supplies at $11,130.00; its machinery, fixtures, equipment and supplies at $33,050.00; and its parts inventory at $228,330.13.

    b.    Schedule a hearing to be conducted on or before January 15, 2015 with the Bankruptcy Court for approval of bidding procedures in connection with the §363 motion to approve an asset sale;

    c.    Schedule a hearing to be conducted on or before February 5, 2015 with the Bankruptcy Court to conduct an auction and approve the §363 asset sale and §365 motion to assume and assign the Franchises; and

    d.    Close the asset sale and assignment of the Franchises on or before February 17, 2015.

Cash Collateral Stipulation, ¶ 9 [*Docket No. 45*].

    11.    Although Debtor filed a motion to approve an asset sale on December 31, 2014 [*Docket No. 50*] that motion was withdrawn in open Court on February 10, 2015. [*Docket No. 77*]. None of the other asset sale benchmarks have been complied with. Debtor's authority to use cash collateral expires February 17, 2015. Cash Collateral Stipulation, ¶ 1 [*Docket No. 45*].

    12.    On February 11, 2015, Ally was informed that Debtor failed to pay monthly insurance premiums to Universal Underwriters for the months of December, 2014 and January, 2015. Payment of these premiums is required to maintain a policy of insurance issued by Zurich which insures Ally's vehicle collateral. Ally understands that a policy cancellation notice will be issued by Universal Underwrites on February 13, 2014 and that this insurance policy will lapse in the event the delinquent premiums remain unpaid.

### III.   GROUNDS FOR VACATING AUTOMATIC STAY

Debtor carries the burden of proof on the issue of adequate protection. 11 U.S.C. §§362(g) and 363(p). Debtor's permission to use cash collateral expires February 17, 2015. Debtor's schedules indicate that Ally's Collateral simply has insufficient value to generate the necessary operating capital to keep the dealership in business and to pay Ally the amounts that Debtor owes.

Debtor's only exit consists of a sale of the dealership assets including a sale of the dealership premises which is not property of the estate. Not only must Debtor find a buyer, Debtor must also obtain GM's and Ford's consent to assume and assign the Franchises. The value of Debtor's Franchises can only be realized through a sale of the dealership. However, there is no pending sale of the dealership.

Debtor cannot carry its burden on the issue of adequate protection, and Debtor is not in a position to provide Ally with adequate protection.

### A. Ally is Entitled to Relief from Stay for Cause, Including Lack of Adequate Protection

Ally is entitled to relief from stay for cause and lack of adequate protection pursuant to 11 U.S.C. § 362(d)(1). Debtor is in default under the terms of the Loan Agreements and has sold Vehicles "out of trust" or "SOT". Debtor's permission to use cash collateral will expire on February 17, 2015. As such, Debtor has no source of income to operate its business. Income is generated only through the sales of Vehicles and parts which all represent the cash collateral of Ally. Once Debtor sells a vehicle or part to a consumer, Ally loses its security interest in the item sold and can look only to the proceeds of the item sold to satisfy its loan balance. Debtor carries the burden of proof on the issue of adequate protection. 11 U.S.C. §§362(g) and 363(p). It is apparent that the Collateral has insufficient value to generate operating capital and to pay Ally that amounts that Debtor owes it while Debtor continues to operate. Further, Debtor is not able to pay insurance premiums to maintain appropriate insurance coverage on Ally's Collateral. Ally is not adequately protected and relief from stay should be granted pursuant to 11 U.S.C. § 362(d)(1).

**B.    Ally is Entitled to Relief Because there is Little or No Equity in the Vehicles for the Estate and the Vehicles are not Necessary for an Effective Reorganization**

Ally is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(2). The total amount that the Debtor owes Ally is over $10,114,629.01.

According to Debtor's Bankruptcy Schedules, the value of the Debtor's vehicle inventory is $6,167,676.14. As shown above, Debtor contends that the value of its parts inventory is $228,330.13; the value of Debtor's furniture and fixtures is $11,130.00; and the value of Debtor's shop equipment is $33,050.00; providing a collateral total of $6,440,186.27.[6]

Accordingly, Ally asserts that as of the petition date that it is undersecured. The total indebtedness owed to Ally is over $10,114,629.01. This leaves Ally undersecured in the approximate amount of $3,674,442.74.

Debtor has no means to satisfy its secured creditors – let alone its unsecured creditors. There is no pending sale of the dealership. Even if Debtor were to obtain a sale, there is no equity in the assets of the estate and no likelihood of a reorganization that is in prospect. Accordingly, Ally has satisfied the conditions to vacate the automatic stay as set forth under *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 US 365, 108 S.Ct. 626, 98 L.Ed2d 740 (1988) and therefore is entitled to relief from the automatic stay.

## IV.    CONCLUSION

For the reasons set forth above, Ally respectfully requests that this Court:

---

[6] Debtor has not attached a value to its Franchises. However, any value associated with the Franchises can be realized only if there is a sale.

1. Issue an order granting relief from the automatic stay authorizing Ally to enforce its security interests in its Collateral including but not limited to taking possession of Ally's vehicle collateral pursuant to applicable law;

2. Waive the 14 day waiting period under Bankruptcy Rule 4001(a)(3);

3. Issue an order directing Debtor to turnover and surrender the Collateral to Ally; and

4. Enter such other and further relief as this Court deems necessary and proper.

DATED: February 12, 2015         ALLY FINANCIAL INC.

                    /s/ Thomas L. Flynn
Thomas L. Flynn (AT0002596)
BRICK GENTRY, P.C.
6701 Westown Parkway, Suite 100
West Des Moines, IA 50309
Telephone: (515) 274-1450
Facsimile: (515) 274-1488
Email: tom.flynn@brickgentrylaw.com

DATED: February 12, 2015                             /s/ Donald H. Cram
Donald H. Cram (*Pro Hac Vice*)
SEVERSON & WERSON, PC
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
Email: dhc@severson.com

# EXHIBIT A

Wholesale Security Agreement dated May 22, 1998, as amended, entered into by Gretter Ford Mercury, Inc.

Security Agreement executed by Gretter Ford Mercury, Inc. on or about May 22, 1998.

UCC-1 Financing Statement filed with the Office of the Secretary of State of Iowa on May 26, 1998 as Document No. K925954, and Document No. K925955, and all amendments and continuation statements.

Assignment of Receivables dated February 10, 2010, executed by Gretter Ford Mercury, Inc.

GMAC Bank Master Wholesale Agreement dated February 15, 2010, executed by Gretter Ford Mercury, Inc.

UCC-1 Financing Statement filed with the Office of the Secretary of State of Iowa on June 8, 2007 as Document No. E843219-7, and all amendments and continuation statements.

Wholesale Security Agreement dated April 16, 2007, as amended, entered into by Gretter Autoland, Inc.

General Security Agreement executed by Gretter Autoland on or about April 16, 2007

UCC-1 Financing Statement filed with the Office of the Secretary of State of Iowa on March 30, 2007 as Document No. E829014-3, and all amendments and continuation statements.

Credit Balance Agreement dated February 1, 2008, executed by Gretter Autoland, Inc.

Assignment of Receivables dated February 4, 2008, executed by Gretter Autoland, Inc.

Cross-Default and Cross-Collateralization Agreement dated May 22, 1998, executed by Gretter Ford Mercury, Inc. and Gretter Motor Company.

Cross Collateral, Cross Default and Cross Guaranty Agreement dated April 16, 2007, executed by Gretter Ford Mercury, Inc. and Gretter Autoland, Inc.

Cross Collateral, Cross Default and Cross Guaranty Agreement dated January 19, 2012, executed by Gretter Ford Mercury, Inc., Gretter Autoland, Inc. and Gretter Chevrolet Company.

# CERTIFICATE OF SERVICE

The undersigned certifies that **Ally Financial Inc.'s Motion for Relief from the Automatic Stay** was served electronically on all parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing this 12th day of February, 2015.

In addition, the undersigned certifies that on February 12, 2015, I served **Ally Financial Inc.'s Motion for Relief from the Automatic Stay** on the following parties by prepaid first class mail:

| *Debtors* | *Counsel for Debtors* |
|---|---|
| Gretter Autoland, Inc.<br>Gretter Ford Mercury, Inc.<br>Gretter Chevrolet<br>PO Box 947<br>Washington, IA 52353 | Bradley R. Kruse<br>Brown, Winick, Graves, Gross,<br>Baskerville and Schoenebaum, P.L.C.<br>666 Grand Avenue<br>Suite 2000<br>Des Moines, IA 50309-2510 |
| *U.S. Trustee* | *Counsel for U.S. Trustee* |
| Federal Bldg, Room 793<br>210 Walnut Street<br>Des Moines, IA 50309 | James L Snyder<br>Federal Bldg Room 793<br>210 Walnut Street<br>Des Moines, IA 50309 |
| *Committee of Unsecured Creditors* | *Committee of Unsecured Creditors* |
| Mark A. Cobb<br>3218 Elm Avenue<br>Brighton, IA 52540 | Darwin K. Sherman<br>111 N. Marion Avenue<br>Washington, IA 52353 |

| *Committee of Unsecured Creditors*<br><br>Ronald C. Slechta<br>P.O. Box 430<br>Kaldna, IA 52247 | *Proposed Counsel for Committee of Unsecured Creditors*<br><br>Jeffrey D Goetz<br>Donald F. Neiman<br>Bradshaw, Fowler, Proctor & Fairgrave, P.C.<br>801 Grand Avenue, Suite 3700<br>Des Moines, IA 50309-8004 |
| --- | --- |
| *Counsel for Washington State Bank*<br><br>H. Raymond Terpstra II<br>Terpstra & Epping<br>3600 First Avenue NE, Suite 101<br>Cedar Rapids, IA 52402 | |

    /s/Linda Han
    Linda Han